UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:06-CV-597-H

| | |
|---|---|
| FRONTIER INSURANCE COMPANY<br>IN REHABILITATION | PLAINTIFF |
| V. | |
| M C MANAGEMENT, INC., et al. | DEFENDANTS |
| RLM CONSTRUCTION COMPANY, INC.<br>and<br>ROBERT MCAULIFFE | THIRD PARTY PLAINTIFFS |
| V. | |
| BROOK SMITH | THIRD PARTY DEFENDANT |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Frontier Insurance Company in Rehabilitation ("Frontier" / "Plaintiff"), sued M C Management, Inc. ("M C Management"), Mark Campisano ("Campisano"), RLM Construction Company, Inc. ("RLM"), and Robert McAuliffe ("McAuliffe") (collectively "Defendants") as indemnitors for payments made under a construction project payment bond. RLM and McAuliffe filed a third-party complaint against Brook Smith ("Smith"), an insurance agent, for fraud. On March 4, 2009, the Court entered a memorandum opinion and a non-final order granting summary judgment in favor of Frontier and Smith, which dismissed with prejudice the counterclaims against Frontier and the claims against Smith (the "Memorandum Opinion"). That opinion was thorough and touched upon most aspects of the relevant issues.

Defendants now move for the Court to alter, amend, or set aside that Memorandum Opinion. The Court has carefully considered the motion and its underlying arguments. More

particularly, the Court has devoted greater attention to a few issues.

I.

The court has already discussed the relevant facts in its prior opinion.

Frontier instituted this action, seeking damages and additional collateral from the signatories to the 1995 General Agreement of Indemnity (the "1995 GAI"). The Court adequately described the relevant facts in its Memorandum Opinion. The Court concluded that the 1995 GAI applied to the bonds issued on this project (the "Haverford Place Bonds") and obligated all its signatories to indemnify the bonds. Further, it concluded that the 2000 GAI was never executed and thus a novation did not occur to extinguish the 1995 GAI's applicability. Additionally, the Court denied any equitable relief on the grounds that (1) when the parties executed the 1995 GAI they intended it to apply to future bonds, (2) its language made it applicable to the bonds, and (3) Frontier need not have specifically relied upon it when executing the Haverford Place Bonds. The Court found that Frontier did not violate any duties as a surety because it did not materially alter RLM or McAuliffe's risk under the indemnity agreement. The Court rejected arguments that Frontier did not make payments in good faith. It then enforced the collateral security provision of the indemnity agreement. Finally, the Court denied any counterclaims for fraud on the grounds that none of the proffered statements or actions amounted to material misrepresentations.

District courts "have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008) (citing *Mallory v. Eyrich*, 922 F.2d 1273, 1282 (6th Cir. 1991)). Fed. R. Civ. Pro. 59(e) permits parties to file a motion to alter or amend a judgment after the entry of the judgment. Although

that rule applies to final orders and not interlocutory orders, other courts have applied its standards to motions for reconsideration of interlocutory orders. *Swanson v. Cent. Bank & Trust, Co.*, 2005 WL 1719363, *1 (E.D. Ky. 2005); *see In Re Pac. Forest Prods. Corp.*, 335 B.R. 910, 917 (S.D. Fla. 2005) (citing several cases that apply Rule 59(e) standards to motions for reconsideration of interlocutory orders). Those standards limit alterations or amendments to situations where "(1) there is a change in the controlling law since the entry of the order, (2) there is new evidence presented that was not previously available or (3) to correct a clear error of law or to prevent a manifest injustice." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009). Though, motions for reconsideration are "not an opportunity to re-argue a case." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

Defendants re-assert their contention that there are issues of fact and law that prevent summary judgment. However, their arguments vary only slightly from those already made and they do not raise any particular new facts or changes in the law. Moreover, the Court's Memorandum Opinion did a thorough job analyzing these rather complex circumstances. Nevertheless, the Court will briefly address Defendants' concerns in turn.

II.

Defendants contend that the Payment Bond, Performance Bond, and Construction Contract are all mandatorily integrated into a single contract (the "integrated contract") as a matter of law. Defendants further argue that the Owner defaulted on the "integrated contract" when it failed to make payments to M C Management according to the "integrated contract's" terms. Thus, Defendants contend that Frontier improperly made payments under the Payment Bond to subcontractors and did so in bad faith. The Court has not previously discussed this

argument in any depth.  Now, because Defendants seem to have elevated the priority of this argument, the Court will give it more thorough consideration.

Where a contract is incorporated into a Performance Bond, Kentucky courts read the bond and the underlying contract "together to determine the intention of the parties as to what and who is covered under the bond." *ABCO-BRAMER, Inc. v. Markel Ins. Co.*, 55 S.W.3d 841, 844 (Ky. App. 2000) (citing *Royal Indem. Co. v. Int'l Time Recording Co. of New York*, 75 S.W.2d 527 (Ky. 1934)).[1]  "[A]ll writings that are part of the same agreement are construed together." *Id.* at 845 (citing *Cook United, Inc. v. Waits*, 512 S.W.2d 493 (Ky. 1974)). Incorporation, however, is only effective where the document is specifically incorporated by reference. *See Buck Run Baptist Church, Inc. v. Cumberland Sur. Ins. Co., Inc.*, 983 S.W.2d 501, 503 (Ky. 1998) (upholding incorporation where "the language of the performance bond clearly incorporate[d] by reference the contract"); *see also Home Lumber Co. v. Appalachian Reg'l Hosps., Inc.*, 722 S.W.2d 912, 914-15 (Ky. App. 1987) (stating that the additional provisions must be incorporated by "plain and direct language").  The Court interprets simultaneously executed, but independent, documents in light of each other to avoid inconsistency and contradiction.  Each independent contract, as part of a broader agreement, can shed light onto the parties' intentions when executing the documents.

Where ambiguity exists in the contract language, the Court will look to "the contract as a whole, and in doing so will consider the subject matter of the contract, the situation of the parties and the conditions under which the contract was written" to interpret the document. *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003).  The Court looks beyond the plain language

---

[1] The bond in that case stated that the contract was "incorporated herein by reference and is made a part thereof." *Id.* at 843.

of the contract. If a contract provision is ambiguous, Kentucky utilizes the doctrine of contemporaneous construction. *A.L. Pickens Co., Inc. v. Youngstown Sheet & Tube Co.*, 650 F.2d 118, 120 (Ky. 1981). Under that doctrine, Kentucky courts "give great weight to the interpretation which the parties have placed on an ambiguous contract," which is best evidenced by their conduct. *Id.* Kentucky courts, however, will only interpret a condition as a condition precedent, or one which must occur prior to the subsequent duty arising, if "required to do so by plain, unambiguous language or by necessary implication." *Id.* at 121.

A.

As noted in the Court's previous opinion, both the Payment and the Performance Bonds separately incorporate the Construction Contract. This is a common, and indeed necessary, practice in the construction industry. On the other hand, neither of the bonds expressly incorporates the terms of the other. The Payment Bond does state in a header at the very top "this bond is issued simultaneously with performance bond in favor of the owner conditioned on the full and faithful performance of the contract." Such a broad and nugatory statement, however, neither incorporates the Performance Bond nor conditions payment under it on the Owner's full project payment to M C Management. Mere reference to the Performance Bond's execution does not incorporate its terms into the Payment Bond.

In separate paragraphs following the identification of the parties to it and the statement of the bond value, the Payment Bond enumerates the specific conditions which govern its obligations. In the Court's view, the generalized statement "conditioned on the full and faithful performance" does no create a clear condition of any sort. The Payment Bond does contain language which does explicitly and clearly condition Frontier's obligation to make payment.

That language appears after the generalized header statement and reads: "if [M C Management] shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the Contract, then this obligation shall be void; otherwise, it shall remain in full force and effect, subject however, to the following conditions." None of the subsequent conditions make any reference to relieving Frontier's liability if the Owner failed to pay M C Management. The general use of the word "conditioned" in a separate header does not make the Payment Bond void where the owner fails to pay M C Management.[2]

B.

Interpreting the Payment Bond in light of the Performance Bond and the Construction Contract does not change the conclusion. The Performance Bond explicitly conditions its obligations on full compliance with the payment instructions contained in the Construction Contract. The Payment Bond lacks such an explicit condition as previously discussed. The documents also do not incorporate each other's provisions. Without such an incorporation, the Payment Bond cannot be deemed to require performance of any term contained in the Performance Bond or in the Construction Contract.

Thus, it is immaterial which party defaulted on the project first, the Owner or M C Management. The only material fact is that M C Management failed to pay its subcontractors and that such failure gave rise to claims under the Payment Bond. Since the Payment Bond does

---

[2] Further, Frontier made payments under the bond even though the Owner had not properly paid M C Management. Such action further indicates that the unclear header does not create a condition precedent to payment. As a matter of common practice in the industry, it would not make sense to adopt Defendants' interpretation. A Payment Bond is for the protection of the owner under all circumstances. An owner may terminate a contractor and wish to avoid liens on the property or liability for unpaid work. The Payment Bond serves that purpose, but would fail to do so were payment to be conditioned on a specific act of the owner.

not condition its obligation on the Owner's full performance of the Construction Contract, mainly making payments to M C Management, the Court need not determine which party defaulted first. Moreover, Frontier began receiving demands under the Payment Bond before the Owner stopped payments and even before M C Management walked off the project.

Since the Court concludes that Frontier's obligation under the Payment Bond is not dependent on the Owner paying M C Management, whether the Owner or M C Management first stopped performing the contract, is irrelevant for our purposes. Thus, no material issue of fact exists that would preclude summary judgment. For similar reasons, no material issue of fact exists regarding whether Frontier made payments in good faith. Frontier paid the subcontractor demands at a reduced rate based on the requisite documentation. Evidence that Frontier later told the Owner to stop payments to M C Management or that Frontier declined requests to approve changes does not evidence bad faith in these circumstances. Such facts play no role in determining Frontier's obligations under the Payment Bond.

### III.

Defendants RLM and McAuliffe also move to alter or amend on the grounds that a genuine issue of material fact exists as to whether a novation occurred and whether Frontier exclusively relied on the 2000 GAI when issuing the bonds. The Court thoroughly addressed the issues of novation and reliance in its previous opinion. Defendants present no new law contradicting those conclusions.

Defendants argue that the Court missed the fact that Beverly Campisano had signed the 2000 GAI, which was never returned to Frontier. Beverly Campisano's signature appears, undated and un-notarized, on one of two signature lines on the unreturned 2000 GAI. As the

Court previously stated, a novation requires the agreement of all parties to a valid new contract. William B. Bardenwerper, 5 Ky. Prac. Methods of Prac. § 43:3 (4th ed. 2008-2009) (citing 66 C.J.S. *Novation* § 3). Beverly Campisano's singular signature does not create a valid new contract and does not demonstrate agreement of all the parties. To create a valid new contract, all three signatories must have assented to the new contract. Furthermore, although Defendants re-assert numerous facts that suggest that various parties intended to execute the 2000 GAI, no evidence genuinely illustrates the intent to replace the 1995 GAI with the 2000 GAI. The evidence only clearly indicates that the parties intended the 2000 GAI to apply to the bonds. That alone, without a properly executed agreement, does not present a genuine issue of material fact as to whether a novation occurred.

## IV.

Defendants RLM and McAuliffe also contend that the 1995 GAI should not be enforced for the equitable reason of limiting it to "a reasonable time." A court may refuse to enforce an indemnity agreement because too much time has passed since its execution. *See William R. Hubbell Steel Corp. v. Epperson*, 679 So.2d 1131, 1133 (Ala. Civ. App. 1996) (refusing to enforce a guaranty agreement nine years after it was executed). Time alone, however, will not extinguish contractual liability. *See Am. States Ins. Co. v. Kirchdorfer*, 2001 WL 1781891 (W.D. Ky. 2001) (enforcing an indemnity agreement more than 20 years after it was executed); *see also Phelps Dodge Corp. v. Schumacher Elec. Corp.*, 415 F.3d 665, 668, 670 (7th Cir. 2005) (enforcing a guaranty agreement more than 30 years after its execution); *Borg Warner Acceptance Corp. v. Shakopee Sports Ctr., Inc.*, 431 N.W.2d 539, 541 (Minn. 1988) (concluding that a guaranty of indefinite duration that contained a termination provision was enforceable

until terminated according to the provision). There is nothing inherently unfair about enforcing the 1995 GAI. The Court finds that enforcing such an agreement, which contained a termination provision, for payments made five years later is reasonable.

V.

Defendants RLM and McAuliffe also reassert their arguments regarding their claims for fraud against Frontier and Smith. Kentucky requires the party claiming harm due to fraud to prove, by clear and convincing evidence, six elements: "(1) the declarant made a material misrepresentation to the plaintiff, (2) the misrepresentation was false, (3) the declarant knew it was false or made it recklessly, (4) the declarant induced the plaintiff to act upon the misrepresentation, (5) the plaintiff relied upon the misrepresentation, and (6) the misrepresentation caused injury to the plaintiff." *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 262 (Ky. Ct. App. 2007) (citing *United Parcel Serv. v. Rickert*, 996 S.W.2d 464, 469 (Ky. 1999)). The Court previously concluded that Defendants had not identified any material misrepresentations and that Defendants failed to demonstrate reliance. Defendants motion for reconsideration asserts no new facts or law. Accordingly, the Court will not alter its previous opinion.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' motions are DENIED. This is NOT a final order.

IT IS FURTHER ORDERED that on or before May 26, 2009, Frontier shall submit a proposed final order.

IT IS FURTHER ORDERED that a hearing is set for **10 a.m. on June 10, 2009**, to

discuss the proposed order.

cc: Counsel of Record