UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:06-CV-597-H

FRONTIER INSURANCE CO.                                                              PLAINTIFF
IN REHABILITATION

V.

M C MANAGEMENT, INC. et al.                                     DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This case involves a surety bond contract and indemnity agreement between Frontier Insurance Co. in Rehabilitation ("Frontier") and several Defendants. The majority of the parties have settled their claims. However, Defendant Robert McAuliffe was not a party to the settlement and retains a cross claim against Defendant Mark Campisano. McAuliffe asserts that an indemnity agreement between himself and Campisano (the "2002 Indemnity Agreement") requires Campisano reimburse him for his expenses, including attorney fees in defending this action, which currently total $137,891.41.[1] McAuliffe has moved for summary judgment on this precise issue, which the parties have now fully briefed.

**I.**

An in depth discussion of the facts underlying this case can be found in the Court's previous opinions. The following brief summary is sufficient for purposes of this motion.

McAuliffe and Campisano are involved in the construction and property management

---

[1] McAuliffe's affidavit claims the following expenses: $102,952.44 in attorney fees, $4,252.03 in costs, $3,974.15 in "expenses/damages" and $27,846.01 in interest. The total of those numbers is $139,024.63, but McAuliffe claims he is seeking only $137,891.41. The Court is unaware of the reason for the difference.

business. In the mid to late 1990s, the two worked together on a number of projects that required payment and performance bonds.[2] To obtain those bonds, they contracted with Frontier. Pursuant to a 1995 General Agreement of Indemnity ("1995 GAI"), Campisano, McAuliffe and a number of others agreed to personally indemnify Frontier in the case that it had to pay out on the bonds. That agreement contained an important provision stating that all of the parties to the 1995 GAI would indemnify Frontier on all *future* projects engaged in by any of them even if there was no notice of the project to the party from whom indemnity is eventually sought.

In 2000, Campisano and his company began a new project that became known as "Haverford Place." A few months into that project troubles arose and Frontier was called upon to pay on the bonds. Frontier quickly sent out notice that it would seek indemnity from all parties to the 1995 GAI, including McAuliffe, who undisputedly had no role in that project. McAuliffe was surprised by the demands of Frontier since he had no involvement in the Haverford Place project. He went to Campisano to discuss the possibility of McAuliffe's liability and, apparently, Campisano agreed that he should be primarily liable as the contractor on the project. Therefore, on June 4, 2002, Campisano and McAuliffe entered the 2002 Indemnity Agreement. That agreement, which appears to have been drafted by Campisano, provides, in relevant part,

> [Campisano] does hereby agree to indemnify and hold harmless [McAuliffe] and any of his related entities, including, but not limited to, MC Holdings, Inc., RLM Properties, LLC, Crestwood Investment Group, LLC and Julie McAuliffe from any and all losses, expenses, damages, or costs, including reasonable attorney fees for defense of same incurred by [McAuliffe] or his related entities, which may be as a result of the [Haverford Place] Project.

---

[2] Payment bonds ensure payment to subcontractors and vendors when the general contractor does not pay them. Performance bonds ensure payment for completion of the project in the event that the general contractor is unable to complete it.

The agreement further provides that McAuliffe must present his claim for costs with appropriate supporting evidence in writing and that Campisano will have thirty days to reimburse him.

McAuliffe has incurred significant expenses in defending against Frontier's claims. Those expenses have been paid by RLM Construction Co. ("RLM"), which is wholly owned by McAuliffe. It is agreed that McAuliffe has submitted his request for reimbursement, but Campisano has not paid.

## II.

Summary judgment is appropriate where the moving party establishes that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "The moving party has the 'initial responsibility of informing the district court of the basis for its motion, and identifying those portions' of the record showing an absence of a genuine issue of fact." *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Then "the non-moving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting Fed. R. Civ. P. 56(e)).

## III.

Campisano does not dispute that the 2002 Indemnity Agreement is valid and enforceable. He further does not dispute that the agreement covers expenses incurred by McAuliffe and "any related entity" in defending this litigation. Campisano's only substantive defense is that RLM is not a "related entity" under the 2002 Indemnity Agreement and, therefore, he has no obligation to reimburse expenses it paid.

The language of the 2002 Indemnity Agreement belies Campisano's argument. It

specifically provides that Campisano will indemnify expenses incurred by McAuliffe and "*any related entity.*" Campisano argues that RLM is not a related entity because it is not one of the entities specifically listed on the agreement. However, the agreement clearly states that the list of entities is not exhaustive; rather, "*any* entity, *including, but not limited to*" those listed is covered. McAuliffe is the sole owner of RLM. Moreover, the facts show that Campisano was aware of RLM at the time the agreement was made. He had worked with RLM and knew that RLM was one of the companies listed on the 1995 GAI. There can be no reasonable argument that RLM is unrelated to McAuliffe.[3] Therefore, Campisano is liable to McAuliffe or RLM for their expenses incurred.

## IV.

The only remaining question is the amount of McAuliffe's reasonable expenses. Campisano raises three arguments to McAuliffe's asserted amounts. The Court will address each in turn.

First, Campisano contends that the expenses incurred by adding new lawyers to the case are unreasonable. Primarily, McAuliffe has been represented by Thomas Hectus. However, Mr. Hectus has enrolled the assistance of several other attorneys with other firms throughout the litigation. Those attorneys have billed approximately $28,283.00 on this case. Campisano does not argue that their rates were unreasonable. Rather, he asserts only that any time they spent familiarizing themselves with the case was unnecessary as Mr. Hectus could have performed all the work himself. This litigation has been very complex, highly nuanced and difficult for all

---

[3] Campisano argues that the term "related entity" is ambiguous and, therefore, summary judgment is inappropriate. In some circumstances, the term may be ambiguous. However, here it is clear that RLM is related to McAuliffe and the parties intended it be covered by the indemnity agreement.

4

parties. Having five lawyers work on this case at different times is not surprising, much less unreasonable. Therefore, the Court finds that Campisano has presented no evidence that the fees charged by attorneys other than Mr. Hectus were per se unreasonable.

Second, Campisano contends expenses incurred prior to entering the indemnity agreement should be excluded. The agreement, however, indicates that Campisano will reimburse McAuliffe for "any and all losses, expenses, damages, or costs." Nothing limits the agreement to expenses incurred after the agreement was signed. Thus, the Court will allow recovery for all expenses related to defending against Frontier's claims, even if incurred prior to entering the indemnity agreement.

Finally, Campisano contends that a significant portion of the attorney fees were incurred in pursuit of a third party claim against Brook Smith. The Court agrees that expenses related to McAuliffe's claims against Smith are not recoverable under the indemnity agreement.

## V.

Neither party has identified the attorney fees it believes are related to the Frontier action as opposed to the fees related to the Smith action. The Court understands that this is a factual dispute that limits the availability of summary judgment. In the interest of efficiency, however, the Court has conducted a detailed review of the bills submitted by McAuliffe to determine as reasonably as possible to what extent the fees are related to the Smith action or the Frontier action. In doing so, many of the charges were clearly related to the Smith case. Others appeared to be related to both Smith and Frontier. The Court attempted to divide the time among the two as reasonably as possible. At this time, the Court will detail its findings below and allow the parties fifteen (15) days to either reach an agreement regarding fees or request a full hearing to

5

determine the value of the attorney fees attributable to Smith and Frontier if they wish to contest the Court's findings. If no such hearing is requested, the Court will enter a Final Order complying with these findings.

## Detail of Findings

(1) Chester Porter and Associates:

    (A) Total related to Smith: $350.00
        10/5/01: Conference re: Smith ($237.50)
        11/1/01: Conference re: Smith ($25.00)
        11/1/01: Draft letter re: Smith ($25.00)
        11/2/01: Conference re: letter to Smith's attorney ($25.00)
        1/24/02: Draft letter re: Smith ($25.00)
        4/8/02: Conference re: multiple issues including Smith (Total billed $50.00; Related to Smith $12.50)

    (B) Total related to Frontier: $3,755.10

(2) John Bleidt: Charges are not broken down per service. The Court calculated the reasonable value of the services apparently related to the Smith claim.

    (A) Total related to Smith: $139.00
        Telephone Conference re: Smith letter
        Draft of letter to Attorney John David Dyche
        Redraft of letter to Attorney John David Dyche

    (B) Total related to Frontier defense: $3,200.00

(3) Alber Crafton, PSC:

    (A) Total related to Smith: $2800.00
        12/17/07: Several services billed, including preparation for Smith deposition (Total billed $300.00; Related to Smith $75.00)
        12/18/07: Prepared for and attended Smith Depo ($1850.00)
        5/12/08: Response, research issues re: Smith Depo ($875.00)

    (B) Total related to Frontier: $11,794.98

(4) Hectus & Strause, PLLC:

(A) Total related to Smith: $13,570.74
    12/4/06: Research re: Smith claim ($122.50)
    12/26/06: Prepare motion and revise Smith Complaint ($175.00)
    2/7/07: Call from John David Dyche ($35.00)
    2/28/07: Review response to Smith Complaint/Prepare letter to John David Dyche ($87.50)
    5/24/07: Meet with Yater re: possible third party claims ($87.50)
    6/12/07: Prepare response to Motion to Dismiss Third Party Complaint ($262.50)
    6/14/07: Review Clerk's notice re: Third Party Complaint ($35.00)
    7/5/07: Review disclosures of several parties (Total billed $87.50; Related to Smith $21.88)
    8/2/07: Review interrogatories from Smith and Frontier (Total billed $52.50; Related to Smith $26.25)
    9/6/07: Several services, including discovery re: Smith (Total billed $122.50; Related to Smith $30.63)
    10/30/07: Review Smith materials ($87.50)
    11/1/07: Review Smith documents ($70.00)
    11/8/07: Conference re: possible third party complaints ($35.00)
    11/12/07: Draft discovery requests to Smith ($70.00)
    11/13/07: Draft discovery requests to Smith ($105.00)
    11/16/07: Research re: Smith case ($6.50)
    11/16/07: Preparation for Smith Depo ($525.00)
    12/10/07: Conference to prepare for Smith Depo ($752.50)
    12/17/07: Review Smith responses and prepare for Depo ($437.50)
    12/17/07: Conference to prepare for Smith Depo ($350.00)
    12/18/07: Smith Depo. ($1,487.50)
    12/26/07: Letter to John David Dyche ($17.50)
    12/18/07: Travel to Smith Depo ($11.70)
    12/18/07: Fees for Smith Depo ($1,550.75)
    3/2/08: Draft Smith settlement agreement ($85.00)
    3/2/08 & 3/6/08: Draft Motions to Compel re: Frontier and Smith (Total billed $290.00; Related to Smith $145.00)
    4/4/08: Several services, including review of Smith documents (Total billed $52.50; Related to Smith $17.50)
    6/9/08: Review Smith Depo and prepare for Henry Depo (Total billed $385.00; Related to Smith $192.50)
    7/7/08: Revisions to answers to Smith interrogatories ($210.00)
    7/10/08: Revisions to answers to Smith interrogatories ($52.50)
    7/11/08: Revisions to answers to Smith interrogatories ($52.50)
    7/24/08: Multiple teleconferences, one related to Smith (Total billed $175.00; Related to Smith $29.17)
    8/5/08: Review response from John David Dyche ($6.50)
    8/6/08: Conference with John David Dyche ($350.00)

8/12/08: Prepare for Smith Depo ($350.00)
8/25/08: Research related to Smith Claim ($65.00)
9/4/08: Research Smith Summary Judgment Motion ($350.00)
9/11/08: Research Smith Summary Judgment Motion ($350.00)
9/22/08: Review Smith Response to Summary Judgment Motion ($87.50)
9/24/08: Research for Smith Motion ($262.50)
9/30/08: Review several documents, including Smith Response (Total billed $262.50; Related to Smith $175.00)
8/6/08: Travel to John David Dyche's office ($11.11)
9/3/08: Review Smith discovery ($19.50)
9/8/08: Review Smith discovery ($6.50)
9/9/08: Draft Motion to Amend Third Party Complaint ($262.50)
9/11/08: File Motion to Amend ($13.00)
9/12/08: File exhibits to Motion to Amend ($13.00)
9/22/08: Review Smith Motion for Summary Judgment ($13.00)
9/25/08: Review responses from Frontier and Smith (Total billed $65.00; Related to Smith $32.50)
10/1/08: Review responses from Frontier and Smith (Total billed $480.00; Related to Smith $240.00)
10/6/08: Review/revise Reply to Smith Motion ($437.50)
10/7/08: Review/revise Reply to Smith Motion ($437.50)
10/8/08: Reply to Motion to Amend ($35.00)
3/10/09 through 3/18/09: Work on Motion to Reconsider (Total billed $3,412.50; Related to Smith $1,706.25)
4/7/09: Review Smith Response to Motion to Reconsider ($70.00)
4/15/09: Draft Reply for Motion to Reconsider (Total billed $245.00; Related to Smith $122.50)
4/16/09: Research related to Smith ($87.50)
4/16/09: Draft Reply for Motion to Reconsider (Total billed $350.00; Related to Smith $175.00)
4/17/09: Draft Reply for Motion to Reconsider (Total billed $437.50; Related to Smith $218.75)
4/20/09: Research related to Smith ($87.50)
4/20/09: Draft Smith Reply ($175.00)
4/20/09: Revise/Review replies from Frontier and Smith (Total billed $350.00; Related to Smith $175.00)
4/20/09: Final edits to replies (Total billed $87.50; Related to Smith $43.75)
5/18/09: Review denial of Motion to Alter (Total billed $35.00; Related to Smith $17.50)

(B) Total related to Frontier: $60,923.62[4]

(5) Martin, Ogburn & Zipperle, PLLC:

(A) Total related to Smith: $0.00

(A) Total related to Frontier: $6,244.00

McAuliffe was billed for $102,777.44 worth of attorney fees. The Court's review shows that $16,859.74 (about 16.4%) of those fees were related to the third party claim and are not recoverable under the indemnity agreement. Therefore, $85,917.70 is recoverable under the agreement. Given the complicated nature of this case, the Court finds that such fees are reasonable.

Campisano has not given any evidence to indicate that the remaining expenses are unreasonable or unrelated to McAuliffe's defense against Frontier. Thus, the Court finds that McAuliffe is entitled to recover an additional $4,252.03 in costs and $3,974.15 in expenses. The Court will not award interest as the damages were not liquidated and the agreement does not require it.

**V.**

The only issue remaining on the Court's docket is a motion to hold the case in abeyance by Frontier. Frontier asks the Court to hold all claims related to Frontier in abeyance until the obligations of the parties under the settlement agreement are fulfilled. It makes this unusual request because the settlement agreement allows Frontier to pursue its entire damages claim against all defendants if the defendants fail to comply with the agreement. Therefore, according

---

[4] McAuliffe claims that expenses from Hectus & Strause, PLLC, total $74,669.36. The Court's review of the bills shows that $175.00 was deducted from that total by the firm. Therefore, the actual total of those expenses is $74,494.36.

to Frontier, it would be more efficient for the Court to hold the case in abeyance so it can pursue those claims in the event the settlement obligations are not fulfilled. However, at least one party has indicated a desire to appeal portions of this Court's rulings. Therefore, to hold the case in abeyance for a significant period of time would prejudice that party's ability to seek appeal. On that basis, the Court will deny Frontier's Motion and enter a Final Order in this case as soon as McAuliffe's cross claim against Campisano is fully resolved. Should the parties not meet their obligations under the settlement agreement, they may file a motion to reopen this case.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendant McAuliffe's Motion for Summary Judgment on his cross claim against Defendant Campisano is SUSTAINED IN PART. Campisano is legally required to reimburse McAuliffe for the claimed fees, expenses, and costs related to his defense of Frontier's claims. On or before April 2, 2010, the parties shall reach an agreement on the amount of those fees or file a motion for a hearing to determine the amount. If no such motion or agreement is made, the Court will enter a Final Order awarding McAuliffe $94,143.88 for his attorney's fees, costs and expenses.

IT IS FURTHER ORDERED that Plaintiff Frontier's Motion to Hold the Case in Abeyance is DENIED. Should the parties fail to meet their obligations under the settlement agreement after the Court enters a Final Order, Frontier may file a motion to reopen the case.

This is NOT a final and appealable order.

cc: Counsel of Record